## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMERIHEALTH NEBRASKA, INC. d/b/a ARBOR HEALTH PLAN, | Case No. 4:16-CV-3100 |
| Plaintiff, | |
| v. | BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS |
| NEBRASKA DEPARTMENT OF ADMINISTRATIVE SERVICES, et al., | |
| Defendants. | |

Defendants Nebraska Department of Administrative Services, Nebraska Department of Health and Human Services, DAS Director Byron Diamond, DHHS CEO Courtney Phillips, DHHS Medicaid and Long-Term Care Director Calder Lynch, and DAS Acting Materiel Division Administrator Frances "Bo" Botelho, in their official capacities, in their official capacities, (collectively "State Defendants") respectfully submit this brief in support of their motion to dismiss Arbor's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## INTRODUCTION AND BACKGROUND

Nebraska has embarked on the creation of Heritage Health, a comprehensive endeavor to integrate and significantly improve the provision of Medicaid services to eligible citizens through Managed Care Organizations ("MCOs"). This strategic effort will unify the delivery of physical health, behavioral health, and pharmacy services

systems, all of which are now separately administered through disparate programs. Arbor is dissatisfied it failed to obtain a Heritage Health contract and is asking this Court to shut down the State's implementation of Heritage Health. Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), State Defendants move the Court for an order dismissing the Complaint for the reasons that Arbor's claims are barred by sovereign immunity and Arbor failed to state a claim upon which relief may be granted.

## PROCEDURAL HISTORY

Arbor filed a Complaint in the District Court of Lancaster County, Nebraska, on June 17, 2016. State Defendants were variously served with summonses and copies of the Complaint on or after June 21, 2016. *See* Filing 1-1.

On June 21, 2016, State Defendants filed a Notice of Removal to this Court, on the grounds that Arbor's Complaint raised claims pursuant to 42 U.S.C. § 1983 for violation of its rights under the United States Constitution. *See* Filing 1 ¶ 2. State Defendants stated this Court has supplemental jurisdiction over Arbor's state law claims, pursuant to 28 U.S.C. § 1367, because the state claims are so related to Arbor's federal claims that they form part of the same case or controversy. *See* Filing 1 ¶ 3. State Defendants now move to dismiss Arbor's Complaint against them in its entirety.

## LEGAL STANDARDS

*Standard for Motion to Dismiss Pursuant to Rule 12(b)(1)*

A party may assert the defense that the court lacks subject matter jurisdiction to hear the underlying case. Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) allows

the Court to address the threshold question of jurisdiction, as judicial economy demands that the issue be decided at the outset rather than deferring it until trial. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). The party asserting jurisdiction bears the burden of proving that jurisdiction is proper. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

It is axiomatic that sovereign immunity implicates the subject matter jurisdiction of a federal court. *Cernik v. Nebraska*, 2010 U.S. Dist. LEXIS 109670 n.2, 2010 WL 4053609 (D. Neb. 2010) (quoting *Jones v. United States*, 255 F.3d 507, 511 (8th Cir. 2001). Accordingly, a federal court lacks subject matter jurisdiction to hear a plaintiff's claims where such claims are barred by the doctrine of sovereign immunity. *See id.*

### Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

A complaint in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Consequently, a motion to dismiss may be granted when the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

"*Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2). Rather, those decisions confirmed that Rule 8(a)(2) is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678; citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "The complaint must 'provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.' Otherwise, a plaintiff with no hope of showing proximate causation could require inefficient expenditure of resources and potentially induce a defendant to settle a meritless claim." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

"When ruling on a motion to dismiss, the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678.) "It is not, however, a 'probability requirement.'" *Id.*

# ARGUMENT

## I.  ARBOR'S 42 U.S.C. § 1983 CLAIMS.

Arbor's Counts VI and VII allege, pursuant to 42 U.S.C. § 1983, that State Defendants violated its due process rights by awarding the contract to someone else and that State Defendants violated 45 C.F.R. § 75.326. For the reasons set forth in this Part, these claims must be dismissed against State Defendants.

### A. DAS and DHHS are not "persons" under § 1983.

Arbor named the Nebraska Department of Administrative Services and the Nebraska Department of Health and Human Services in this action. Since State agencies are not "persons" subject to suit under 42 U.S.C. § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989), both § 1983 claims against DAS and DHHS must be summarily dismissed.

### B. Arbor's § 1983 claims are barred by sovereign immunity.

The doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), holds that sovereign immunity does not bar suits for prospective injunctive relief against state officials in their official capacity. However, while a suit to enjoin state officials in their official capacity may proceed if the complaint alleges an ongoing violation of federal law, and seeks relief properly characterized as prospective, a declaratory judgment establishing past liability of the State is nevertheless forbidden. *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 646 (2002).

Arbor does not allege an ongoing violation of federal law. Instead, Arbor challenges events that have already occurred. Filing 1-1 ¶ 65 ("award of contracts prior to completion of Arbor Health's protest was unconstitutional); *Id.* at ¶ 70 ("Defendants violated this mandatory compliance with Nebraska's procurement policies and procedures"). These alleged past violations do not serve as allegations of ongoing violations.

The lack of ongoing violation is presumably why Arbor does not specifically request *prospective* injunctive relief as part of its § 1983 claims. Instead, Arbor requests declarations involving alleged past violations of their rights. Filing 1-1 at 13. A declaratory judgment establishing past liability of the State is forbidden. *See Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 646 (2002).

Accordingly, since Arbor has not alleged an ongoing violation of federal law, and does not seek relief as part of its § 1983 claims properly characterized as prospective, the declaration regarding past liability of the State that Arbor wants is forbidden by sovereign immunity.

### C. Arbor's due process claim fails because failed bidders do not hold a property interest in the award of a public contract.

Arbor claims that its due process rights have been violated by State Defendants' awarding the contract to someone else. Filing 1-1 ¶ 63. But, Arbor does not allege it has a protected property interest and cannot establish a constitutionally protected property interest.

To state a claim under the Fourteenth Amendment's Due Process Clause, a plaintiff must allege the deprivation of a protected interest without due process of law. *Demien Construction Co. v. O'Fallon Fire Protection District*, 812 F.3d 654, 658 (8th Cir. 2016); *Barnes v. City of Omaha*, 574 F.3d 1003, 1005-06 (8th Cir. 2009). "Protected interests under the Due Process Clause are those to which a person holds a 'legitimate claim of entitlement,' and stem from 'independent source[s] such as state law.'" *Id.,* (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972).

Generally, an unsuccessful bidder obtains no property right in the award of a contract. *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, No. 15-1222, 2016 WL 690849, at *4 (8th Cir. Feb. 22, 2016) (applying Missouri law); *see Day v. City of Beatrice*, 169 Neb. 858 (Neb. 1960) (stating that "[o]rdinarily an unsuccessful bidder for public work has acquired no legal right to protect, either in law or equity, since the letting of contracts to the lowest bidder is regarded as being for the benefit of the public and not for individual bidders."). Moreover, the Supreme Court has explicitly held that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *see also*, *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 462-63 (1989).

The mere expectation of the award of a contract does not give rise to a cognizable due process claim. It is established in Nebraska and most other jurisdictions that a party whose bid proposal was not accepted does not acquire any rights in and to the contract. For example, the Nebraska Supreme Court in *Day v. City of Beatrice* held that "[a]n unsuccessful bidder has no contractual right to enforce…. It was a proposal only that bound neither party, and as it was never consummated by a contract the city acquired no rights against the plaintiff nor he against the city." *Day*, 169 Neb. at 866.

The Nebraska Supreme Court has long concluded that public officials possess a discretionary power in awarding contracts. *Day*, 169 Neb. at 864. Nebraska law also recognizes that government officials have broad discretion in considering bid proposals for public contracts under the competitive bidding statutes. *See Rath v. City of Sutton,* 267 Neb. 265 (2004). "[W]henever a public body has discretion to make a decision during the bidding process, a court is essentially limited to reviewing that decision for bad faith." *Id.* at 285. Likewise, "it is not the province of a court to interfere and substitute its judgment for that of the administrative body." *Id.* at 284.

Accordingly, Arbor has not alleged it had any property interest of which it was deprived due process. This Court, as recently as this year, reaffirmed the principle that an unsuccessful bidder generally obtains no property right in the award of a public contract. *Reddick Mgmt. Corp. v. City of Omaha, Nebraska*, No. 8:16CV99, 2016 WL 1627608, at *4 (D. Neb. Apr. 22, 2016) (citing *Higgins, supra*). It should do so again here.

### D. Claim under 45 C.F.R. § 75.326.

Arbor alleges that 45 C.F.R. § 75.326—a regulation promulgated under the Medicaid Act requiring that a state must follow the same policies and procedures for procurements using federal funds as it uses for procurements using its non-federal funds—was violated by State Defendants. Arbor purports to bring this claim under 42 U.S.C. § 1983. Filing 1-1 ¶¶ 111-117.This claim fails as a matter of law for any of several easily discernible reasons.

#### 1.     Failure to allege differentiated procurement policies.

Arbor is attracted to the opening sentence of 45 C.F.R. § 75.326, which reads: "When procuring property and services under a Federal award, a state must follow the same policies and procedures it uses for procurements from its non-Federal funds." Arbor's contention is that the rescoring and the manner in which the rescoring was conducted deviated from the process established by the Manual, which in turn is how the State conducts its procurements using non-federal funds. Filing 1-1 ¶ 68. Its theory is entirely contingent on the Court otherwise concluding that the Manual, a non-regulatory guidance document, sets forth the exclusive process for procurements by the State. As comprehensively established elsewhere in this brief, this is simply untrue as a matter of law.

Neb. Rev. Stat. § 73-504(2) provides, in pertinent part: "All proposed state agency contracts for services in excess of fifty thousand dollars shall be bid in the manner prescribed by the division procurement manual **or a process approved by the**

*Director of Administrative Services.*" (emphasis added). Here, though the rescoring was not specifically prescribed by the Manual, Arbor has failed to plead any facts showing the rescoring was not conducted pursuant to a process "approved by" the DAS Director.

Arbor's Complaint is devoid of any allegation that such a Director-approved process is used exclusively for procurements involving the use of federal funds, nor has Arbor specifically alleged a differentiated application of Neb. Rev. Stat. § 73-504(2) for procurements using federal funds versus those using non-federal funds. Thus, even if Arbor had a right of action to enforce 45 C.F.R. § 75.326 (it does not), its Complaint facially fails to state a substantive claim upon which relief can be granted.

## 2. No private right of action.

In any event, Arbor lacks a private right of action to enforce 45 C.F.R. § 75.326. To proceed, Arbor "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone,* 520 U.S. 329, 340 (1997)(emphasis original). "For legislation enacted pursuant to Congress's spending power, like the Medicaid Act, a state's non-compliance typically does not create a private right of action for individual plaintiffs, but rather an action by the federal government to terminate federal matching funds." *Lankford v. Sherman*, 451 F.3d 496, 508 (8th Cir. 2006).

A three-part test determines whether Spending Clause legislation creates a right of action under 42 U.S.C. § 1983: (1) Congress intended the statutory provision to benefit the plaintiff; (2) the asserted right is not so "vague and amorphous" that its

enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states. *Id.* (citing *Blessing,* 520 U.S. at 340-41). At minimum, the first prong of the *Blessing* test is clearly not satisfied here.

*First,* as an initial and obvious matter, the *Blessing* inquiry relates to determining whether a "*statutory provision*" creates a right of action. *See id.* (emphasis added) 45 C.F.R. § 75.326 is a regulation, not a statute. This is not a trivial detail, as the Eighth Circuit and other Courts of Appeals have specifically observed. *See, e.g., Midwest Foster Care and Adoption Ass'n v. Kincade,* 712 F.3d 1190, 1198 n.5 (8th Cir. 2013) ("We are cognizant of the responsibility to tether our analysis to congressional intent, rather than an agency's implementing regulations.") (citing *Save Our Valley v. Sound Transit,* 335 F.3d 932, 939 (9th Cir. 2003) ("[A]gency regulations cannot independently create rights enforceable through § 1983.")); *see also Shakhnes v. Berlin,* 689 F.3d 244, 251 (2d Cir. 2012) (relying on *Save Our Valley,* the Second Circuit confirmed that though regulations could be "relevant" in determining whether an underlying statute creates a right of action, one that "goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provision" is too far removed from the statute to be actionable); *Johnson v. City of Detroit,* 446 F.3d 614, 627-29 (6th Cir. 2006); *S. Camden Citizens in Action v. N.J. Dep't of Env. Prot.,* 274 F.3d 771, 787-90 (3d Cir. 2001).

These holdings are fully consistent with (and, indeed, several build upon) the Supreme Court's post-*Blessing* clarification on the importance of determining *Congress's* intent:

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.
>
> …
>
> We have recognized that whether a statutory violation may be enforced through § 1983 "is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute." But the inquiries overlap in one meaningful respect—in either case we must first determine whether **Congress** *intended to create a federal right.*

*Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002) (citation omitted; emphasis added in part). Since the "right" Arbor asserts is claimed under a regulation, the Court is unable to determine whether it is one *Congress* intended to create. Arbor's 45 C.F.R. § 75.326 claim fails for this threshold reason.

*Second,* even if Arbor's claim was tied to a provision of the Medicaid Act itself, it is far from clear that Arbor—a commercial enterprise which failed to obtain a contract to administer hundreds of millions of dollars in Medicaid benefits—is the congressionally-intended beneficiary it purports to be. To establish that it is, Arbor must identify a statute "phrased 'with an *unmistakable focus* on the benefited class.'" *Gonzaga,* 536 U.S. at 285 (emphasis original). And even if it could identify a statute phrased in such explicit rights-creating terms, it would still need to show that "the statute manifests an intent 'to create not just a private *right* but also a private *remedy.*'" *Id.* (emphasis original) (quoting *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001)).

In at least one strikingly analogous scenario, a federal appeals court has firmly held that no such right or remedy exists for disappointed bidders for contracts to provide managed care to Medicaid beneficiaries. In *AlohaCare v. Hawaii Dept. of Human Services,* 572 F.3d 740 (9th Cir. 2009), the Ninth Circuit rejected claims by a group of federally qualified healthcare organizations which had unsuccessfully bid on a contract to provide managed health care to Medicaid-eligible aged, blind, and disabled individuals. The case turned on whether 42 U.S.C. § 1396b(m)—a provision within the Medicaid Act's broader scheme for the allocation and receipt of federal funds to states which defines managed care organizations and prescribed conditions for the reimbursement of Medicaid expenditures—confers a federal right to contract eligibility that could be remedied by § 1983. *Id.*

The court held that disappointed bidders possess no such right, concluding with ease that, "the [statutory] provisions entirely lack the sort of 'rights-creating' language critical to showing the requisite intent to create new rights." *Id.* at 746 (quoting *Gonzaga,* 536 U.S. at 287). Regarding the *statute's* reimbursement conditions, the court characterized that the provision is "focused on the procedural requirements of the Medicaid Act and is squarely directed to governmental agencies and phrased in aggregate terms." *Id.* (citation omitted). Such language could likewise describe the fundamentally procedural *regulatory* provision championed by Arbor here. Ultimately, the court concluded that the plaintiff managed care contract bidders were "simply cogs in a grander statutory scheme." *Id.*

That inquiry, employed here, would be substantively fatal to Arbor's theory regarding 45 C.F.R. § 75.326. But *AlohaCare* confirmed, as State Defendants established in their preceding argument, that Arbor is not even entitled to that measure of analysis, since Arbor's challenge comes under a regulation and not a statute. For when the *AlohaCare* court turned to the plaintiffs' alternative arguments that Medicaid Act regulations demonstrated the congressional intent that 42 U.S.C. § 1396b(m) could not, the court rejected such arguments, swiftly concluding "[p]laintiffs suing under § 1983 must demonstrate that a *statute*—not a regulation—confers an individual right." *Id.* at 747 (quoting *Save Our Valley,* 335 F.3d at 943 (see mention of *Save Our Valley* in immediately preceding argument and the Eighth Circuit's citation to the same at *Midwest Foster Care,* 712 F.3d at 1198 n.5)).

For either of the foregoing reasons, Arbor has failed to state a claim on its allegations under 45 C.F.R. § 75.326.

## II.   ARBOR'S STATE LAW CLAIMS.

Arbor's Counts I through V ostensibly allege claims under the Nebraska Administrative Procedure Act ("APA"), the Uniform Declaratory Judgments Act ("UDJA"), and Nebraska common law. But, Arbor's Complaint is so devoid of specificity that it is impossible to determine which count or cause of action Arbor intends to pursue under the APA or UDJA. Indeed, Arbor's only reference to the APA or UDJA in its Complaint is in the jurisdictional statement. Arbor Complaint, Filing 1-1 ¶ 9. Given this, State Defendants will do their utmost to separately delineate Arbor's

blended arguments. As described in this Part, these claims must be dismissed against all State Defendants due to sovereign immunity and/or simple failure to state a claim.

<u>*Note Regarding the Court's Jurisdiction Over the State Law Claims*</u>

Regardless of the order in which the Court chooses to consider the arguments within State Defendants' motion to dismiss, State Defendants urge the Court to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 and dispose of the state law claims in consolidation with the federal claims. Given that the entirety of Arbor's claims rest on the same set of operative facts and, further, that legal principles applicable to the federal claims are applicable to the state claims (e.g., State Defendants' discretion), addressing only the former but remanding the latter for further proceedings would be unwarranted. The Complaint, given its structure and the factual context upon which it relies, is subject to its federal and state claims being resolved in a single proceeding.

<u>*Sovereign immunity*</u>

Neb. Const. art. V, § 22, provides that "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." *Engler v. State Accountability & Disclosure Comm'n*, 283 Neb. 985, 991 (2012). This provision of the Constitution is not self-executing, but instead requires legislative action for waiver of the State's sovereign immunity. *Id.* Statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver. *Id.* A waiver of sovereign immunity is found only where stated by the most express language of a statute or by

such overwhelming implication from the text as will allow no other reasonable construction. *Id.*

## A. Claims under the Nebraska APA.

### 1. Absence of a rule or regulation.

Arbor is a disappointed bidder who generally alleges violations of the DAS Agency Procurement Manual for Services (the "Manual") and various statutes in an attempt to bring a claim under Neb. Rev. Stat. § 84-911 and avoid the sovereign immunity bar. But the limited waiver of sovereign immunity granted by § 84-911 does not confer jurisdiction unless Arbor challenges the validity of an actual rule or regulation. Since the Manual and statutes cited by Arbor are not rules or regulations and Arbor is not challenging the validity of any rule or regulation, its § 84-911 claim must fail as a matter of law.

### 2. Failure to challenge a rule or regulation.

For Arbor to prevail under the APA, this Court must find that a challenged "rule or regulation" is invalid under Neb. Rev. Stat. § 84-901(2) (Reissue 2008). Since Arbor failed to challenge anything constituting a rule or regulation, the limited statutory waiver of sovereign immunity provided by § 84-911 does not apply.

For purposes of the Administrative Procedure Act:

Rule or regulation shall mean any rule, regulation, or standard issued by an agency, including the amendment or repeal thereof whether with or without prior hearing and designed to implement, interpret, or make specific the law enforced or administered by it or governing its organization or procedure.

Neb. Rev. Stat. § 84-901(2) (Reissue 2008). Neither the Manual nor the various statutes cited by Arbor constitute rules or regulations.

*The Manual is not a rule or regulation*

The Manual is a guide developed by the State Purchasing Bureau to assist agencies and vendors with the procurement process. Arbor does not plead any facts showing the Manual has the authority of law, rule or regulation, is subject to promulgation under the APA, or was promulgated in the Nebraska Administrative Code. Moreover, the Nebraska Legislature declined to require that DAS adopt the manual as a rule or regulation.

Like its counterparts in other states, the APA as originally enacted was based on the 1946 Model State Administrative Procedure Act prepared by the National Conference of Commissioners on Uniform State Laws. In order to define "rule or regulation" in broadly inclusive terms, the word "statement" was a popular component of the definition. F. Cooper, State Administrative Law, at 108 (1st ed. 1965). This was "necessary to defeat the inclination shown by some agencies to label as 'bulletins,' 'announcements, 'guides,' 'interpretive bulletins,' and the like . . . to assert that their promulgations are not technically rules but merely policy statements, and hence may be issued without observance of the procedures required in connection with the adoption of rules." *Id.* Specifically, in Iowa, the term "statement" was added to eliminate what was characterized as "widespread evasion of rulemaking procedures . . . on the grounds

that the agency action in question was not a 'rule, regulation, order or standard,' but was instead a 'manual,' 'memo,' 'guideline' or 'policy.'" Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, the Rulemaking Process*, 60 Iowa L. Rev. 731, 827 (1975); *see also* Alaska Stat. Ann. § 44.62.640 ("regulation" includes "manuals," "policies," "instructions," "guides to enforcement," "interpretative bulletins," "interpretations").

Nebraska took the opposite approach and rejected such a construction. In 1959, the Nebraska Legislature affirmatively rejected an attempt to expand the definition of rule or regulation under § 84-901(2). LB 362 proposed expanding this definition to include "statement[s] of policy." 1959 Neb. Laws, L.B. 362. But, after objections were raised in the Judiciary Committee hearing on the bill, this proposed amendment was stricken, along with other then-existing language applying the definition of rule or regulation to "any policy," "so that the bill would not apply to mere statements of policy . . ." Committee Statement, L.B. 362, Judiciary Committee, 69th Leg. Sess. (April 15, 1959). "Such action or inaction, as the case may be, on the part of the Legislature is persuasive and indicates a legislative intention to affirmatively reject [a statutory construction]." *Schultz v. Sch. Dist. of Dorchester in Saline Cty.*, 192 Neb. 492, 497 (Neb. 1974). Accordingly, the Nebraska Legislature has rejected the inclusion of manuals within the definition of "rule or regulation."

In Counts I through III Arbor alleges various statutory violations. Since these statutes are plainly not rules and regulations, they are not subject to challenge under the APA and these claims must be dismissed.

### 3. Even if the DAS procurement manual constituted a rule or regulation, Arbor has not challenged its validity.

Arbor attempts to improperly use § 84-911 to challenge perceived violations of the Manual, *but not the validity of the Manual itself*. Filing 1-1 ¶ 56. Instead, Arbor alleges the Manual is "valid." Filing 1-1 ¶ 55. Even if State Defendants did violate the Manual, the limited statutory waiver of sovereign immunity provided by § 84-911 is for challenges to the validity of rules or regulations, not to challenge alleged violations of the same. Since the Manual is not a rule or regulation, and since Arbor is not challenging the validity of a rule or regulation, Arbor is unable to succeed on the merits of its claim under § 84-911.

### B. Claims under Nebraska common law.

In its Count V, Arbor attempts to state a claim for "unlawful arbitrary action by state agency" under Nebraska common law. Filing 1-1 ¶¶ 58-61. But Arbor does not allege a cause of action or any waiver of state sovereign immunity over this alleged claim and, therefore, this claim must be dismissed.

## C. Claims under Nebraska's Declaratory Judgments Act.

### 3.      Sovereign immunity.

The Nebraska UDJA provides, in pertinent part:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Neb. Rev. Stat. § 25-21,150. "The decision whether to entertain an action for declaratory judgment is within the discretion of the trial court." *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.,* 268 Neb. 439 (2004).

The Nebraska Supreme Court has repeatedly held that the UDJA does not waive the State's sovereign immunity, and a plaintiff who seeks declaratory relief against the State must find authorization for such remedy outside the Act. *Zawaideh v. Nebraska Dep't of Health & Human Servs. Regulation & Licensure,* 285 Neb. 48, 58 (2013). In *Riley v. State,* the Supreme Court found: "An action for a declaratory judgment cannot be maintained against the state without its consent because the state's immunity from suit is unaffected by the declaratory judgment statutes…" 244 Neb. 250, 256 (1993). For purposes of bringing a standalone UDJA claim, Arbor has not identified any authorization for such claims outside the Act.

While Arbor characterizes its requested relief under Nebraska law as injunctive, entering the injunction Arbor seeks would force the State to reopen the RFP process

(Arbor's ultimate goal) and compel affirmative actions on behalf of the State requiring the expenditure of public funds. "[S]overeign immunity bars suits to compel affirmative actions that require a state official to expend public funds." *Doe v. Bd. of Regents of Univ. of Nebraska*, 280 Neb. 492, 511 (2010).

In Count III, Arbor alleges a violation of Neb. Rev. Stat. § 81-161(2). Filing 1-1 ¶¶ 48-53. Arbor does not identify how this statute waives the state's sovereign immunity or provides Arbor with a cause of action. Also, § 81-161, by its terms, applies to personal property:

> All purchases, leases, or contracts which by law are required to be based on competitive bids shall be made to the lowest responsible bidder, taking into consideration the best interests of the state, the quality or performance of the **personal property** proposed to be supplied, its conformity with specifications, the purposes for which required, and the times of delivery.

Neb. Rev. Stat. §81-161(1)(emphasis added). Accordingly, Arbor's alleged violation of § 81-161 in this instance is misplaced.

In Counts I and II, Arbor alleges violations of Neb. Rev. Stat. §§ 73-501 and 73-504 based on alleged violations of the Manual. Filing 1-1 ¶¶ 40-47. Arbor does not identify how these statutes waive the state's sovereign immunity or provide Arbor with a cause of action. Even if Arbor could allege a standalone violation of these statutes, Arbor has failed to state a claim because these sections provide the Director of the DAS with discretion. Neb. Rev. Stat. § 73-504(2) provides, in pertinent part: "All proposed state agency contracts for services in excess of fifty thousand dollars shall be bid in the

manner prescribed by the division procurement manual *or a process approved by the Director of Administrative Services.*" (emphasis added). Therefore, DAS has discretion to use a process other than that prescribed by the Manual.

Finally, even if Arbor could pursue its claims under the UDJA, it is not entitled to any relief given its failure to plead any bad faith. In *Rath v. City of Sutton*, the Nebraska Supreme Court held:

> Recognizing that public bodies exercise an official discretion when awarding bids, we have stated that courts will show deference when reviewing challenges to a public body's responsibility determinations and award decisions. Where there is a showing that the administrative body, in exercising its judgment, acts from honest convictions, based upon facts, and as it believes for the best interests of its municipality, and where there is no showing that the body acts arbitrarily, or from favoritism, ill will, fraud, collusion, or other such motives, it is not the province of a court to interfere and substitute its judgment for that of the administrative body. *Best v. City of Omaha*, 138 Neb. 325, 328, 293 N.W. 116, 118 (1940). *In other words, whenever a public body has discretion to make a decision during the bidding process, a court is essentially limited to reviewing that decision for bad faith*. See, *Day v. City of Beatrice*, 169 Neb. 858, 101 N.W.2d 481 (1960); *Best, supra; State, ex rel. Nebraska B. & I. Co., v. Board of Commissioners*, 105 Neb. 570, 181 N.W. 530 (1921).

*Rath v. City of Sutton*, 267 Neb. 265, 284-85 (2004) (emphasis added). This case falls squarely under the *Rath* analysis. Since Arbor does not even allege any bad faith, its claims necessarily fail to state a claim.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Court should dismiss all claims against State Defendants with prejudice.

Submitted this 25th day of July, 2016.

**NEBRASKA DEPARTMENT OF
ADMINISTRATIVE SERVICES,
NEBRASKA DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
BYRON L. DIAMOND, FRANCIS
BOTELHO, COURTNEY N.
PHILLIPS, and CALDER LYNCH,
State Defendants.**

By: DOUGLAS J. PETERSON
   *Attorney General of Nebraska*

By: *s/ Ryan S. Post*
   Ryan C. Gilbride, NE #22415
   Ryan S. Post, NE #24714
   David A. Lopez, NE #24947
   Jessica M. Forch, NE #24912
   *Assistant Attorneys General*

   James D. Smith, NE # 15476
   *Solicitor General*

   OFFICE OF THE ATTORNEY GENERAL
   2115 State Capitol
   Lincoln, Nebraska 68509
   Tel: (402) 471-2682
   Fax: (402) 471-2957
   Ryan.Gilbride@nebraska.gov
   Ryan.Post@nebraska.gov
   Dave.Lopez@nebraska.gov
   Jessica.Forch@nebraska.gov
   James.Smith@nebraska.gov

   Attorneys for State Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2016, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, using the CM/ECF system, causing notice of such filing to be served upon all parties' counsel of record.

By: *s/ Ryan S. Post*